UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA
    Plaintiff,

v.

DONALD RAY MORGAN
    Defendant - Petitioner,

FILED
AUG 28 2023
IN THIS OFFICE
Clerk U.S. District Court
Greensboro, N.C.
By _____

Cases:
1:14-cv-194-1
1:14-cv-414-1
1-20-cv-00965

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REDUCE
SENTENCE PURSUANT TO 18 USC 3582 (c)(1)(A)(i)

(HEARING REQUESTED)

## INTRODUCTION

MR. Donald Morgan, Pro Se, asks this Court to grant him compassionate release by reducing his term of imprisonment pursuant to 18 USC 3582(c)(1)(A) due to extraordinary and compelling reasons warranting compassionate release. also in light of a recent precedence set in U.S. v. Hammoud (3:14-cv-76-GCM) WDNC in which the Judge cited 3A1.4 as reason for a 5 year reduction which was not precedence in Mr Morgan's original 19 July 2021 3582(c)(1)(A) motion filing.

Among other grounds, this Court is empowered to reduce a prisoner's sentence when there exists a drastic disparity in the defendant's sentence versus what he would have been sentenced today. E.g., U.S. v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020). Notably, Mr. Morgan who is now 53 years old was arrested in August 2014 and has served over 9 years of his 20 year sentence for a non-violent crime. In contrast, the average defendant today convicted for similar crimes would be sentenced only to an average sentence of 58 months - 3 times less than Mr. Morgan's sentence (2339(b) maxed at 180 months). This comparison includes even violent offenders, which Mr Morgan is not.

Mr. Morgan's recidivism risk is unlikely particularly due his growth in seeking moderate viewpoints and lessons learned. Also, it had been over 15 years prior to this arrest that he had any law enforcement interaction. In fact, he was a productive business man and father and husband and son. Furthermore, Mr. Morgan has demonstrated his ability to learn and grow inside prison. Despite over 5 years ago having some troubled spots in his transition to anger management and moderation, his participation in Educational, Psychological and recreational programs has aided him in his rehabilitation and improvements. His adoption of a "middle of the road" attitude has resulted in a more peaceful, harmonious position that has allowed him to be incident free over 5 years. One year ago, 16 July 2023, Mr Morgan suffered the devestating blow losing his 76 year old mother to cancer, who battled bravely for over 9 years. However, this loss also centered Mr. Morgan's focus and goals to earn
b

his release to be reunited with his son and lead a quiet productive life outside of prison before I may no longer be able to do so.

Mr. Morgan has been diagnosed with sciatic nerve disorder related to degenerative discs due to arthritis in his lower back at L4, L5 & S1, S2 which will only worsen over time. Despite restricting his levels of physical activity and movement, he has accepted living with a regular level of pain and discomfort. Certainly remedies and therapy treatments not available in the BOP such as chiropractic services would be certain to improve his quality of life as the condition will only worsen over time as he ages. A sentence reduction would allow him to quickly seek medical assistance, maintain a relationship with his son, contribute to society and continue to grow in a positive way. Given Mr. Morgan's disproportionately long sentence, conviction for a non-violent crime, and substantial rehabilitation while in prison, relevant injustices surrounding his counsel and case, there are extraordinary and compelling reasons warranting reducing Mr. Morgan's sentence.

## FACTUAL BACKGROUND

Mr Morgan has been imprisoned since August 2014 over 9 years of which approximately 5-6 years has been in forms of isolation or absolute solitary confinements some at lengths of a year or 3 years at a time. It would be insufficient to just say the effects were limited or minimal. The greater portion of this 9 years has been categorized as an "International Terrorist" which resulted in the most oppressive measures to all but separate him from the outside world, most importantly a healthy regular contact and communication with his ailing mother and young son. All studies and prison reform initiatives have cited the short and long term effects isolation, solitary confinement and oppressive conditions can have upon any individual - Mr Morgan has been no exception. Mr. Morgan was originally sentenced under

the then-mandatory Sentencing Guidelines of 180 months for the 2339(b) Providing material support to a FTO charge to run consecutive with a 922(g) Possession of a firearm by Felon at the maximum range of the guideline, 63 months for a total sentence of 243 months. Although Mr. Morgan's attempt to enter Syria and give aid and assistance to the innocent Muslims who were being bombed and attacked daily were obstructed, he is only cited for crimes of speech, tweets, opinion. In fact, Mr. Morgan has no actual victims nor damages. Even the facts of the 922(g) are lacking any element of criminality, except Mr. Morgan acted in good-faith with an understanding of N.C. law GS 14-417.1 That, on his own property, he may handle or in this case sell a lawfully registered "long rifle". However, its the hype and high profile nature of his "terrorism" charge and his outspoken nature that triggered Sentencing Guideline 3A1.4, which not only drove his sentencing length the highest levels possible but countless other defendants labelled as "terrorists" also. Every U.S. Attorney was on auto-pilot to maximize sentence lengths to report a strong attack against "Islamic Jihadists" in the war on Terror. Mr. Morgan's Section 3A1.4 charge resulted in a 12 level sentence enhancement that placed Mr. Morgan's criminal history into the highest category VI.

Mr. Morgan's arrest and case was one of the first Americans charged in 'ISIS' related cases and one of the first defendants who went to the middle East. Therefore, it goes without saying the news, local and national as well as media coverage in general was at a favor state. Anyone would naive to believe today in 2023, that circumstance was anything but harmful for Mr. Morgan's defense or outcome when one compares similar cases as his to recent sentencing lengths.

It is factual that in his 9 years of incarceration, Mr. Morgan has gone through struggles and changes. Years of isolation, being discriminated against in general and BOP policy for being labeled a "terrorist", isolated from his dying mother and young son, he had a year or two that infractions were received. It is pointless

and irresponsible to waste the Court's time defending wrong actions. Mr. Morgan made mistakes, but what is worth this Court's time and consideration is that he learned, changed and grew from his errors. He pursues the "middle" path in faith and position, and strives to balance peace and harmony in his life with a laser focus, especially losing his mother last July, to get home with his son before it's too late for a good life with him. In addition to pursuing a moderate path, he has been active in completing Educational Courses, Psychology Help treatments and even Recreational Programs such as Wellness and crochet, which allows him to send gifts to his family. He has completed important groups such as Anger Management, Veterans PTSD & Resilience course, Criminal Thinking, which are incentivized and rewarded in the First Step Act, but Mr. Morgan receives NO incentives, no time credits, and no rewards because the First Step Act bars "terrorists" from any incentives. Doesn't seem fair or right that an inmate deemed a "terrorist" has been determined to be irredeemable or deserving of reward for improving himself. So, Mr. Morgan, without incentive of rewards even time credits, still participates and completes these groups and courses for the reward of bettering himself in preparation and hope of leaving prison better than he arrived. Mr. Morgan is more than confident that upon his release, Lord willing earlier with a sentence reduction, he will not be a burden nor concern for the community as he is equipped with many skills, education and experience that makes him an assest and employable at any company, but most important is reuniting with his son to be an integral part of his life and his future family's life.

Mr. Morgan was diagnosed with sciatic nerve damage caused from deapddating disc due to arthritis in his lower back at the L4, L5, S1, S2. When there are episodes involving the sciatic nerve it can almost make movement impossible not to mention extremely painful. However, he experiences fatigue

discomfort and pain on a daily basis. Medical informed him that surgery could offset the inevitable but any back and spinal operation comes with great risk. However, with a sentence reduction allowing his return to society would open doors for holistic therapies not offered in the BOP such as chiropractic treatments

As an inmate over 53 years old, Mr. Morgan is also at significant risk of severe illness with permanent consequences or death from COVID-19. Recent BOP data states that there have been 282 deaths and 7851 inmates currently have the disease.

## ARGUMENT

I. Mr. Morgan has the Statutory Right To Petition For A Reduced Sentence under the First Step Act.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), which amended 18 USC 3582(c)(1)(A), grants the Court the Authority to reduce a sentence when "extraordinary and compelling reasons" are present, as they are here. As a result of the First Step Act, a court need not rely upon a motion by the Director of the BOP. 18 USC 3582(c)(1)(A)(i), see Pub.L. No. 98-473, 98 Stat 1837S, 1998-99 (Oct 12, 1984). Instead, a court may now reduce a sentence "upon motion of the defendant" in two circumstances: (i) when the defendant has exhausted his administrative remedies to appeal the BOP declining to bring a motion or (ii) when 30 days have lapsed "from the receipt of such a request by The Warden of the defendants' facility, whichever is earlier." 18 USC 3582(c)(1)(A) see U.S. v. Muhammad, No 20-7520 US App. LEXIS 31582, at #6 (4th Cir, Oct 20, 2021) [defendant need not exhaust Admin. Remedies]

On August 2, 2023, Mr. Morgan utilizing inter-ADX mail sent a request for sentence reduction to Warden Ciolli at USP Florence ADMAX in Florence, CO where Mr. Morgan is held. ~~More than 30 days passed since the warden's receipt of~~

On August 9, 2023 (received by defendant 16 Aug) the Warden denied Mr. Morgans request and the BoP didn't file a motion on his behalf. Accordingly, Mr. Morgan brings this motion directly under the amended 18 USC 3582(c)(1)(A). (See Attach. Warden's rejection letter)

Under 3582(c)(1)(A), a court may reduce a petitioning prisoner's sentence if the "court ... finds that ... extraordinary and compelling reasons warrant such a reduction," and that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and court considers the 3553(a) sentencing factors. 18 USC 3582(c)(1)(A). The Sentencing Commission has guided that "extraordinary and compelling" reasons warranting release may be based on the following: (A) the prisoner's medical condition, (B) the prisoner's age; (c) family circumstances, or (D) "[o]ther [r]easons," defined as "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (c)." USSG 1B1.13, cmt. n.1; e.g., US v. Haynes, 456 F. Supp. 3d 496, 508 (EDNY 2020).

  A. This Court Should Consider Extraordinary and Compelling Reasons Beyond Those Identified by USSG 1B1.13 and Its Commentary.

The Fourth Circuit has made clear that a court should "consider any extraordinary and compelling reason for release that a defendant might raise" - not just the factors specifically enumerated by the Sentencing Commission. U.S. v McCoy, 981 F. 3d 271, 284 (4th Cir. 2020) (quoting U.S. v Brooker, 976 F. 3d 228, 230 (2d Cir. 2020)). The Fifth Circuit's decision in U.S. v. Shkambi, 993 F. 3d 388 (5th Cir. 2021), which relies upon McCoy, is also instructive. That case holds that because the application note to USSG 1B1.13 limits that application of its policy statement to motions filed by the BoP, a district court "cannot rely on pieces of text in an otherwise inapplicable policy statement." Id at 392 (emphasis added) (citing McCoy, 981 F.3d at 282). The Shkambi decision is compelling in its logic: "text may not be divorced from context." Id (quoting U.S. v Graves, 908 F. 3d 137, 141 (5th Cir. 2018);

see also ANTONIN SCALIA & BRYAN A GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012) ("The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.") The context of the policy statement shows that it applies only to motions filed by the BOP," Shkambi, 993 F. 3d at 392 (emphasis added).

"The District court on remand is bound only by 3582(c)(1)(A)(i) and, as always, the sentencing factors in 3553(a)." Id. at 393 (citing U.S. v McGee, 992 F. 3d 1035, 1050 (2021)., U.S. v Gunn, 980 F. 3d 1178, 1180 (7th Cir 2020); McCoy, 981 F. 3d at 284; US. v. Jones 980 F. 3d 1098, 1111 (6th Cir 2020); U.S. v. Brooker, 976 F 3d 228, 234 (2d cir 2020)).

## II. COURTS REGULARLY GRANT COMPASSIONATE RELEASE WHEN DEFENDANTS WOULD BE SUBJECT TO A MUCH SHORTER SENTENCE IF SENTENCED TODAY.

"[A]ny extraordinary and compelling reason" includes a large sentencing disparity between the prisoner and other defendants convicted of the same crime. See, e.g. U.S. v. Redd 444 F. Supp. 3d 717, 722 (E.D. Va 2020) (granting defendant's motion to reduce his sentence brought "based on extraordinary and compelling circumstances with respect to his excessive term of imprisonment and his extensive rehabilitation while incarcerated.") In McCoy, the Fourth Circuit affirmed the district court's grant of a sentence reduction primarily due to the dramatic disparity in the defendant's sentence versus the sentence that would, on average, have been imposed today, in light of changes in sentencing law. U.S. v. McCoy, 981 F. 3d 271, 285-88 (4th Cir 2020). Specifically, the Fourth Cir emphasized "the incredible length of the [32-year] mandatory sentence imposed,' which far exceeded that necessary to 'achieve the ends of justice.' If sentenced today ... McCoy likely would be subjected to less than half that sentence – a disparity of over 200 months." Id at 278 (citation omitted). The court

also placed weight on that McCoy's young age at the time of the offense "with no relevant criminal history," making stacked sentencing particularly inappropriate. Id. Lastly, the court considered "McCoy's rehabilitation, shown through his many educational and vocational achievements and his [restitution] payments." Id. Further, the court emphasized that a sentence reduction must take into account "the substantial sentences the defendants already had served at the time of their motions — from 17 to 25 years — [meaning] that each defendant had spent close to or more than half his life in prison." McCoy, 981 F.3d at 286 (citations omitted). McCoy instructs that because the BOP used its compassionate release power "so sparingly," Congress removed the BOP from the equation for the very purpose of relaxing the administration of the standard and making compassionate release more available. Id. at 275.

Consistent with McCoy, many courts have granted sentence reductions based primarily on gross disparities in prisoner's original sentences versus what they would be sentenced today, combined with rehabilitation while incarcerated:

Redd, 444 F. Supp. 3d at 728 (red. from 50.25 to 20.25 years)

U.S. v. Wilkerson, No. 5:96-(?-)(?-1H, 2021 U.S. Dist. LEXIS 52048, at *5 (EDNC Mar 19, 2021) (red. from life plus 45 to time served)

Babb v. U.S., No. ELH-04-6190, 2021 US Dist LEXIS 105829, at *29 (D. Md. June 4, 2021) (red. life plus 5 years to 30 years)

U.S. v. Adeyemi, 470 F. Supp. 3d 489, 520 (E.D. Pa 2020) (red. from 32 years and 1 month to time served)

A. Courts may reduce sentences for Disparities in Sentencing Even When There is No Change in Sentencing Law.

McCoy involved an eliminated mandatory sentence-stacking under 18 USC 924(c); however, its broad principle of considering the length of a defendant's sentence versus what the defendant

would be sentenced today, sentencing disparities, and its recognition of congressional intent to reduce prison time when there is a low risk of recidivism must guide courts in their consideration of motions to reduce a sentence. See McCoy, 981 F.3d at 284 (citation omitted) (holding that "district courts are empowered in to consider any extraordinary and compelling reason for release that a defendant might raise.") See also U.S. v. Gonzales, 520 U.S. 1, 5 (1997)("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.")

Further, courts applying McCoy have held that gross sentencing disparities, in of itself, warrant sentence reductions. See, e.g. Babb v. U.S. No. ELH-04-0190, 2021 US Dist LEXIS 105829, at *29 (D. Md June 4, 2021) (holding that gross sentencing disparity may constitute an extraordinary and compelling reason to grant compassionate release.) As such, Fourth Circuit district courts have followed McCoy's reasoning to other types of disparities in sentencing beyond a change in the statute that was that basis of the sentence affecting the prisoner. See U.S. v. Payton, No. PJM 06-341, 2021 US Dist LEXIS 46804, at *4 (D. Md. Mar. 10, 2021) (expanding McCoy's holding to instances of disparities between the defendant and a co-defendant's sentence).

Courts have also reduced sentences due after considering the length of a sentence and amount of time served, along with other factors — regardless of change in sentencing law. For example, in U.S. v. Adeyemi, the court considered how pursuant to the First Step Act, Adeyemi's sentence today would be lower after the change in 924(c)'s sentence stacking, and noted the substantial case law granting compassionate release in light of gross disparities in sentencing post-amendment of the Act. 470 F. Supp. 3d, 489, 520 (ED Pa. 2020). After finding that a change in 924(c)'s stacking alone did not warrant an extraordinary and compelling reason on its own, Id at 524-25, the court considered the BOP's "other" enumerated factors for identifying extraordinary and compelling reasons, specifically:

The nature and circumstances of the defendant's offense, his criminal history, comments from victims, unresolved detainers, supervised release violations, institutional adjustment, disciplinary infractions, personal history derived from the presentence invest. report, length of sentence and amount of time served, age and age at time of offense and sentencing, release plans, and whether release would minimize the severity of the offense.

476 F. Supp 3d at 526 (citation and internal quotation marks omitted). The court then consider[ed] each of these factors and conclude[d] [defendant] fulfills each and every one. Relying on the BOP's own criteria for 'other' extraordinary and compelling circumstances warranting compassionate release, we grant [defendants] compassionate release motion." Id.

Notably, despite change in sentencing law under First Step Act making Mr. Adeyemi's sentence longer than it would be had he been sentenced today, the court ~~held~~ held nonetheless that "we ultimately concluded Mr. Adeyemi has shown extraordinary and compelling reasons - not due to Mr Adeyemi's health conditions alone, nor due to a change in sentencing law [alone], but under the combination of the factors approved and applied by the Bureau of Prisons." Id at 529. In analyzing the length of sentence and the amount of time served, the district court considered Adeyemi's extraordinary long sentence and the much shorter sentence he'd receive if sentenced today. Id at 528. Thus, Adeyemi exemplifies a court's ability to grant a sentence reduction due to disparities in sentencing - regardless of whether the disparity ~~go~~ is specifically due to intervening change in sentencing law.

    B. Courts Consider Mean and Median Sentences ~~of~~ Defendants with similar Records.

    Finally, courts may ~~consider~~ consider sentencing disparities among defendants with similar records, by comparing sentences

of other person convicted of the same offense. Specifically, in U.S. v. Eccleston, the court compared the defendant's 417-month sentence to the mean and median sentence of persons convicted of similar crimes, as demonstrated through the most recent U.S. Sentencing Commission (USSC) Report. No. CR-95 0074 JB, 2021 US Dist LEXIS 108877, at * 143 (D N M June 10, 2021); see also Babb, 2021 US Dist LEXIS 105829, at * 32 (D. Md. June 4, 2021) (comparing the defendant's sentence and noting it was "significantly longer" than other federal sentences according to the USSC report averages and granting his reduction in sentence) In Eccleston, the defendant had been convicted of two firearm counts to be served consecutively and robbery counts to be served concurrently. Eccleston, 2021 US Dist LEXIS 108877, at * 143. After determining the mean and median sentence length for robbery and firearm offenses based on the report, the court added these amounts together as a proxy for Eccleston's sentences being served consecutively. The court then concluded that added together, the mean and median sentence for defendant's who committed similar crimes today would be 209 and 107 months, respectively, which was substantially shorter than Eccleston's 417 month sentence. This finding weighed in favor of the court's decision to modify his sentence from 417 months to 228.

III.  "EXTRAORDINARY AND COMPELLING REASONS" WARRANT A
       REDUCTION IN MR. MORGAN'S SENTENCE.

   A.  Mr. Morgan's 243 MONTH SENTENCE IS DISPROPORTIONATE
       IN COMPARISON TO OTHER DEFENDANTS SENTENCED TO LESS
       THAN 72 MONTH AVERAGE FOR SIMILAR CRIMES.

       Mr. Morgan has been imprisoned over 9 years, despite being convicted exclusively for nonviolent crimes for which the government did not identify a victim. This Court sentenced him to the available statutory maximum of 180 months on the 2339(b) providing material support to a FTO and the USSG maximum sentence of 63 months on the 922(g) poss. of a firearm and ran the two consecutively despite one not related to the other.

Following the guidance of cases such as McCoy and Eccleston, the court should, therefore, compare Mr. Morgan's sentence to the corresponding crime average sentences from the latest USSC report and add together the mean and median sentences for the groupings of Mr. Morgan's crimes conviction sentenced consecutively. *f 2021 US Dist LEXIS 108877, at *143. Also, the court should examine the sentencing mean and median of the 922(g) offense without application of elevated level and category punitively used with USSG 3A1.4 Terrorism enhancement. For National Defense crimes (which includes 2339(b))- the mean sentence was 38 months and the median was 24 months. Adding these together, the mean sentence for a comparable sentence today would be 96 months and the median 58 months. These mean and median sentences include those given to individuals who engaged in violent conduct - of which Mr. Morgan did not - including use of biological and chemical weapons and weapons of mass destruction. Mr. Morgan's sentence is therefore over three-times longer than the typical sentence for crimes under these statutes, including those with far worse conduct.

Further, Mr. Morgan has already served over one-half his minimum sentence range - in itself exceeds the typical sentence a defendant would on average receive if sentenced today. A survey of 82 defendants convicted from 2010-2021 under 18 USC 2339b - the same material support statute Mr. Morgan was convicted under - reveals that the average sentence was only 128.6 months (10.7 years). Only 2.44% of all cases resulted in a sentence of over 20 years, and 0% of cases going to trial resulted in a sentence over 20 years. Yet, Mr. Morgan was not only one of the 2.44%, but had counsel who ineffectively represented him to the point he bullied Mr. Morgan to actually sign a "Plea Agreement" for over the guidelines, 25 years which this Court, his Honor T.D. Schroeder admonished. Mr. Morgan's sentence and time served are longer than sentences for comparable defendants. Mr. Morgan's sentence exceeds any reasonable or just sentencing metric. In hindsight and the benefit of Mr. Morgan's changes in

in his attitude, outlook, behaviour, and striving for a moderate approach and muddle pathway, he has improved himself while participating in programs, that may not "benefit" him as it does other inmates under the First Step Act with time credits, incentives etc due to his "terrorist" label BUT they have and do benefit him as a person and an asset back in society; There is no objective factor to justify the continuation, and indeed the exacerbation of, the disparity. He simply needs a chance unless this court is willing to claim all other offenders violent or nonviolent deserve opportunity or can change course to be better person except those labeled as "terrorists". In McCoy, the court granted a sentence reduction upon reasoning that "the incredible length of the 32-year mandatory sentence imposed", which far exceeded that necessary to 'achieve the ends of justice'. If sentenced today ... McCoy likely would be subjected to less than half the sentence." 981 F.3d at 278 (citation omitted). Mr Morgan's 243 months sentence far exceeds the needs of justice and Mr. Morgan would subject to less than half that sentence today. Cf., McCoy, 981 F.3d at 278.

      B. Mr Morgan's U.S.S.G 3A1.4 Terrorism Sentence
         Enhancement Makes His Sentence Even More
         Disproportionate.

     Under USSG 3A1.4 (a terrorism sentence guideline adjustment), the increase in Mr Morgan's criminal history, which the Sentencing Commission "legislated", is more egregious and with less factual basis then the stacking under 924(c) which was the basis of Mr. McCoy's sentence. Mr. Morgan's criminal record exceeded over 15 years prior to his arrest and from that time until his arrest he was productive business man, husband, father and son. Yet, McCoy had engaged in violent behaviour — two robberies while brandishing a gun. Moreover, the Sentencing Commission had much more data on recidivism of those convicted of multiple robberies than those convicted of terrorism crimes.
     In the case of material support, the Sentencing Commission

had no data to support the imposition of an increase to criminal history category VI and the increase of 12 to the offense level. See U.S. v. Alhaggagi 372 F. Supp 3d 1005, 1014 (N.D. Cal 2019) (citations omitted) (noting "It's also inappropriate to automatically increase a defendant's criminal history based on unsubstantiated assumptions about recidivism. 'The terrorism enhancement is not backed by any empirical evidence.'"). This is particularly true in the case of a non-violent offender, like Mr Morgan, where there is no evidence presented to support a violent act — judicial facts recent district courts decisions have relied upon to reject that increase. Certainly, until the law or the constitution changes words, feelings, expressions regardless how passionately they may be relayed are not acts of violence. See id at 1015 (finding "the terrorism enhancement's treatment of criminal history, flies in the face of fair, individualized sentencing" and refusing to apply it); U.S. v Jumaev, 2018 US Dist LEXIS 119916, 2018 WL 3490886 at *12 (D.C. Cal July 18, 2018) (citation omitted) (finding that "The terrorism enhancement, when applied, "takes a wrecking ball" to the initial Guidelines range," and declining to apply it) U.S. v. Davis, 482 F. Supp. 3d 800, 802-03 (E.D. Wis, 2020) (finding 3A1.4 is "contrary to the purposes of sentencing in 18 USC 3553(a), including the notion that sentences should be individualized and proportionate, and that we should distinguish between the worst offenders and those who are less dangerous." and refusing to apply it.) In short, the increases in Offense Level and Criminal History that are at the core of 3A1.4 and defined Mr. Morgan's sentence are exactly the type of mechanistic sentencing — that reflexively defines an individual as irredeemable with no supporting data — the First Step Act is intended to replace with compassion and reasoned application of the 3553 factors not leave a prisoner hopeless. Although Mr. Morgan, unlike McCoy, has not spent half his life in prison, he lost a decade caring for his young son, his dying mother (who has passed last July 2022) or preparing for his later years of life. It can only be imagined what punishment he will bear all his life not being there for his mother at her dying moments, but it can be certain no court could equal in punishment.

Similar to the many courts that have granted compassionate release, and most notably the decision and opinion of the Judge in V.S. v Hammond 2022 US Dist LEXIS 214184 (WDNC 2022) criticizing disparity and punitive nature of 3A1.4 said "The specter of the terrorism enhancement USSG 3A1.4 also loomed over Hammond's sentencing. That provision triggers dramatically enhanced penalties at sentencing, catapulting a defendants offense level by 12 points and ratcheting the criminal history category to the highest level, category 6. In Hammond's case, the effect of the enhancement on his Guidelines sentence was extreme. His offense level jumped from 34 to 46, and his criminal history category went from lowest (I) to highest VI. ECF no. 1163, 88 87,90,99,100. As a result his guidelines called for Life, instead of 151-186 months. Id. 115; see USSG Ch. 5 pt A (sentencing table) Although the court ultimately employed a variance, the Guidelines calculation - heavily weighted by the "terrorism enhancement" undoubtedly influenced the sentence that Hammond received, see V.S. v. Wallace, 515 F. 3d 327, 334 (4th Cir 2008)(noting that a within guidelines sentence is "presumptively reasonable") V.S. v Moreland, 437 F 3d 424, 434 (4th Cir 2006)("The farther a sentencing court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be"). In sum, the Court finds that the disproportionate and disparate sentence that Hammond received, coupled with the specifics of his case, constitute "extraordinary and compelling" reasons for sentence reduction") U.S v. Hammond 2022 US Dist LEXIS 214184 (W.D NC 2022). Therefore, Mr Morgan humbly and respectfully moves this court to follow the precedence and ruling of the neighboring Western District of NC applying the same compassion and mercy displayed in V.S v Hammond by granting a sentence reduction and compassionate release, without the application of 3A1.4 to Mr Morgan's sentencing Guidelines he may have exceeded at this stage of his time served that reduced sentence,

### C. Terrorist Defendants with Much More Egregious Conduct Have Been Granted Compassionate Release.

The fact that Mr. Morgan is convicted of a terrorism—

related offense should not bar him from compassionate release. In fact, courts have granted numerous motions for compassionate release on grounds such as medical conditions to defendants convicted of terrorism-related charges, including involvement in violent attacks on the United States. See U.S. v. Bary No. 98-cr-1623(LAK) at *7 (SDNY Oct 7, 2020); U.S. v Hassoun 470 F. Supp 3d 804 (N D Ill 2020); U.S. v. Rana, No. 09 CR 830-8, 2020 US Dist LEXIS 208638 at *2 (ND Ill June 9, 2020) These courts have refused to disqualify these defendants based upon the offense of conviction.

Many defendants with convictions for providing material support to foreign terrorist org. (FTOs) and conspiracy to do the same, like Morgan have also been granted compassionate release, U.S. v. El-Hanafi, 460 F. Supp 3d 502, 505 (SDNY 2020); U.S. v. Hasanoff 10-cr-162, 2020 US Dist LEXIS 199816, 2020 WL 6285308 (SDNY Oct 27, 2020). That Mr. Morgan was convicted for providing material support to an FTO should not prevent this court from granting him early release.

Further, in granting compassionate release when the underlying conviction is material support, the court can consider whether the amount of support actually provided to terrorism "pales in the comparison of other terrorism cases" that were granted compassionate release. U.S. v Amina Farah Ali, No. 10-187(01) (MJD), 2021 US Dist LEXIS 73320 at *6 (D Minn. Apr 16, 2021) In contrast, Mr. Morgan was convicted primarily for social media posts and a failed attempt to leave his home and residence in Beirut, Lebanon and enter Syria to render aid, assistance to Muslims being bombed, droned, chemically tortured by a variety of domestic and foreign actors. In short, Mr. Morgan is less culpable than many defendants that have been granted compassionate release.

D. Under 3553(a) Mr. Morgan is Qualified for Release Based Upon Time Served, and Mr. Morgan is Not a Danger to the Community, consistent with USSG 1B1.13.

In addition to finding extraordinary and compelling circumstances, the Court must find that the reduction conforms

"applicable policy statements issued by the Sentencing Commission," and the Court must consider "the factors set forth in [18 USC] 3553 (a)." 18 USC 3582 (c)(1)(A). In considering Sentencing Commission Policy statements, courts look to United States Sentencing Guidelines 1B1.13, which largely reiterates other requirements from 3582 (c)(1) and adds that "the defendant is not a danger to the safety of any other person or to the community." 18 USCG 1B1.13; McCoy, 981 F.3d at 276. In conducting this analysis, courts typically consider risk of recidivism and disciplinary incidents as shown through BoP reports and coursework done while in prison. See e.g. Haynes, 456 F. Supp. at 517; Babb, 2021 US Dist LEXIS 105829, at 47-49.

This brief does not focus on all the factors set forth in USC. 3553(a), which are largely duplicative of discussion throughout the brief. These factors, as applied to Mr. Morgan, include: (1) nature of the offense and the defendants character (here Mr. Morgan is nonviolent offender, was upstanding business man and family man prior to arrest with over 15 years void of law enforcement engagement or concerning conduct); (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment (this goal already fully served by a sentence over 9 years of imprisonment that is on par and above the mean and median sentence); (3) the kinds of sentences available and the applicable Guidelines range (without application of 3A1.4, discussed herein, his sentence served is within and above current Guidelines range); (4) any pertinent Commission policy statements (as discussed 18 USCG 1B1.13, cont n.1 explains that "extraordinary and compelling" reasons warrant release, including "other reasons"); (5) the need to avoid unwarranted sentence disparities (others charged with similar offenses, the time served is already acceptable); and (6) the need to provide restitution to victims (no victims were identified). 18 USC 3553(a). As also discussed herein, analyzing these factors in light of Mr. Morgan's acknowledgement his mistakes and responsibilities for conduct, views, and actions before and while incarcerated and taking active steps to alter course to a middle, moderate path and health concerns further support

this petition.

Mr. Morgan is ~~not a danger to the community~~, and his risk of recidivism is unlikely, especially given his pursuit of tolerance, moderation and unyielding desire to be a role model and support for his son. In fact, Mr Morgan has remorse and regret for errors he has made not only in actions but statements, and he merely wants the opportunity to prove he deserves a second chance and despite a terrorism case, he is not irredeemable as is so often ~~the~~ accepted consensus. In fact, Mr. Morgan challenges any analyst, tech staff member or custody officer to impede his professional and respectful conduct as well as dispute that the thousands of letters written to his mother and son were not absolutely positive, loving, caring and guidance to good character, morals and deeds. Over the last 5 years, Mr Morgan has worked diligently to maintain a moderate perspective in his faith, life and losing his mother, not even being notified by BOP staff for over a month after they were notified by ~~his~~ son, he maintain good conduct and character, holding his head high hoping for an opportunity to be with his son again. Mr. Morgan utilizes his time now in prayer, self reflection, taking advantage of Educational, Psychological and Recreational programs and activities.

The fact that Mr. Morgan now in his middle-age, who still has the love and support of his son, together with his demonstrated improved good behaviour, participation in vital activities, courses, therapies and acceptance of responsibility further reduces any risk of recidivism. See Hassoun, 470 F. Supp 3d at 806 (acknowledging Hassoun has engaged in a "malicious attempt to destroy or damage a building using an explosive device," but concluding he demonstrated that he has taken positive steps while serving his time in custody, these past almost 10 years, and has agreed to removal to Lebanon," and granting sentence reduction to time served.)

Mr Morgan's educational, psychological, and recreational achievements and most importantly recalibrating his views, outlook and pursuing a middle path for a peaceful life place in a unlikely risk of recidivism. further bolster

Mr Morgan's request for compassionate release, Mr Morgan's improved perspectives, conduct, increased help through his psychological courses, educational courses, will prepare him to be returned back as a viable member of society and with his son.

As the court in McCoy considered the prisoner's "rehabilitation, shown through his many educational and vocational achievements". In reducing McCoy's sentence, we urge this Court to consider not only Mr Morgan's participation in such courses and programs but what he feels is most important which is his realignment of his ideas, views, perspectives to tread a middle path and balance in his life, his accepting responsibility for his actions and his desire to be a good father, friend and role model for his son. Let us be honest, this court and government may want to learn that Mr Morgan have completed educational course, but the reality, right or wrong, bias or discriminatory as it can be perceived is my beliefs to which I will only reiterated one last time that I only wish to pursue a peaceful life with my son and try to stay in the middle path, not extreme on either end of the spectrum. Now I ask this Court to give me the chance to put these changes into action with my son and in a second chance at life.

## Conclusion

Mr Morgan meets the requirement for "extraordinary and compelling reasons" warranting compassionate release pursuant to under 18 USC 3582 (c)(1) A. Mr Morgan's 243 month sentence is substantially longer than comparable sentences of prisoners sentenced for similar crimes, even including violent offenders. Upon release, Mr Morgan would be employable, productive, positive member of society who would have the support of his son and access to medical therapies to alleviate his arthritis and sciatica nerve condition. Mr. Morgan respectfully ask the Court to grant him what remains of his life a second chance to be with his son by reducing his sentence to time served.

Dated : 16 August 23                    Respectfully Submitted,

Donald Ray Morgan 80886053
USP Florence ADMAX
Po Box 8500
Florence, CO 81226

20

CERTIFICATE OF SERVICE

I HEREBY certify that on 17 August, 2023, the foregoing document was sent to the Clerk of Court via regular U.S. mail, postage prepaid, and additionally a copy sent to the U.S. Attorney's Office of the Middle District of N.C. and defendants prior counsel of record, ~~Andrew McCoppin~~.

Dated: 16 August, 2023

Donald R Morgan

Donald R Morgan 80886053
USP Florence ADMAX
Po Box 8500
Florence, CO 81226



**Individualized Needs Plan - Program Review** (Inmate Copy)  SEQUENCE: 01906938
Dept. of Justice / Federal Bureau of Prisons   Team Date: 04-28-2023
Plan is for inmate: MORGAN, DONALD RAY  80886-053

| | | |
|---|---|---|
| Facility: | FLM FLORENCE ADMAX USP | Proj. Rel. Date: 05-14-2032 |
| Name: | MORGAN, DONALD RAY | Proj. Rel. Mthd: GOOD CONDUCT TIME |
| Register No.: | 80886-053 | DNA Status: BRO12598 / 08-04-2014 |
| Age: | 52 | |
| Date of Birth: | 06-29-1970 | |

**Detainers**

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

**Current Work Assignments**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| FLM | UNASSGN | UNASSIGNED | 03-14-2022 |

**Current Education Information**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| FLM | ESL HAS | ENGLISH PROFICIENT | 07-17-2015 |
| FLM | GED HAS | COMPLETED GED OR HS DIPLOMA | 07-17-2015 |

**Education Courses**

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| FLM | | THE AMERICAN WEST ACE CLASS | 04-03-2023 | CURRENT |
| FLM | | BEGINNER STRESS MANAGEMENT | 02-13-2023 | CURRENT |
| FLM | C | ACE - ENGLISH GRAMMAR | 01-02-2023 | 04-01-2023 |
| FLM | C | ENJOYING SECOND HALF OF LIFE | 10-31-2022 | 11-21-2022 |
| FLM | C | FORENSIC HISTORY ACE | 10-03-2022 | 12-31-2022 |
| FLM | C | SELF STUDY FILM LITERATURE | 10-03-2022 | 11-14-2022 |
| FLM | C | WELLNESS CLASS | 12-13-2021 | 02-15-2022 |
| FLM | C | BEGINNING CROCHET | 11-29-2021 | 02-07-2022 |
| MAR CMU | C | CRIMINAL THINKING #6 | 06-04-2020 | 06-30-2020 |
| MAR CMU | C | ANGER MGMT #6 | 04-19-2019 | 04-29-2019 |
| MAR CMU | C | INCARCERATED VETERANS GROUP | 04-03-2019 | 04-19-2019 |

**Discipline History (Last 6 months)**

| Hearing Date | Prohibited Acts |
|---|---|
| ** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ** | |

**Current Care Assignments**

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 10-26-2021 |
| CARE1-MH | CARE1-MENTAL HEALTH | 08-11-2015 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|---|---|---|
| C19-T NEG | COVID-19 TEST-RESULTS NEGATIVE | 03-15-2021 |
| NO PAPER | NO PAPER MEDICAL RECORD | 10-26-2021 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 10-26-2021 |
| YES F/S | CLEARED FOR FOOD SERVICE | 10-26-2021 |

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| ED COMP | DRUG EDUCATION COMPLETE | 06-01-2018 |

**FRP Payment Plan**

| Most Recent Payment Plan |
|---|

| FRP Assignment: | COMPLT | FINANC RESP-COMPLETED | Start: 06-21-2018 |
|---|---|---|---|

| Inmate Decision: | AGREED | $25.00 | Frequency: QUARTERLY |
|---|---|---|---|
| Payments past 6 months: | $0.00 | | Obligation Balance: $0.00 |

**Financial Obligations**

ATTACH 1
Case 1:14-cr-00414-TDS   Document 51   Filed 08/28/23   Page 23 of 29



**Individualized Needs Plan - Program Review    (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: MORGAN, DONALD RAY  80886-053

SEQUENCE: 01906938
Team Date: 04-28-2023

**Most Recent Payment Plan**

| No. | Type | Amount | Balance | Payable | Status |
|-----|------|--------|---------|---------|--------|
| 1 | ASSMT | $200.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

*** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ***

**FRP Deposits**

Trust Fund Deposits - Past 6 months:   $ N/A          Payments commensurate ?   N/A

New Payment Plan:   ** No data **

**Current FSA Assignments**

| Assignment | Description | Start |
|-----------|-------------|-------|
| FTC INELIG | FTC-INELIGIBLE-REVIEWED | 10-28-2021 |
| INELIG AUT | FTC-INELIGIBLE OFF CODE - AUTO | 12-17-2019 |
| N-ANGER Y | NEED - ANGER/HOSTILITY YES | 05-03-2023 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 05-03-2023 |
| N-COGNTV Y | NEED - COGNITIONS YES | 05-03-2023 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 05-30-2021 |
| N-EDUC N | NEED - EDUCATION NO | 05-03-2023 |
| N-FIN PV Y | NEED - FINANCE/POVERTY YES | 05-03-2023 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 05-03-2023 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 05-03-2023 |
| N-MEDICL N | NEED - MEDICAL NO | 05-03-2023 |
| N-RLF Y | NEED - REC/LEISURE/FITNESS YES | 05-03-2023 |
| N-SUB AB Y | NEED - SUBSTANCE ABUSE YES | 05-03-2023 |
| N-TRAUMA Y | NEED - TRAUMA YES | 05-03-2023 |
| N-WORK N | NEED - WORK NO | 05-03-2023 |
| R-MED | MEDIUM RISK RECIDIVISM LEVEL | 05-03-2023 |

**Progress since last review**

Since last review, Morgan has completed Self Study Film Literature, Forensic History ACE, Enjoying the Second Half of Life and ACE English Grammar Bootcamp.  He is currently enrolled in Beginner Stress Managment and The American West ACE Class.

**Next Program Review Goals**

By next review, complete all classes that you are currently enrolled in.  Enroll in Money Smart, Anger Management, Walk with Ease and New Freedom in-cell.  Complete VET Solider and Partners in Parenting.

**Long Term Goals**

By May 2024 Maintain clear conduct Maintain work Recreate regularly Complete ACE "Forensic History" with ED Complete Anger Management group with PSY Complete Money Smart for Adults with ED Complete Walk With Ease with REC Complete Non-Residential Drug Abuse Program (NRDAP) group with PSY

**RRC/HC Placement**

No.
Management decision - Will review 17-19 months prior to PRD.

**Comments**

--Eligible for step down due to your participation in programming.
* In order to improve your chances for getting into step-down, you need to complete a 500 word essay stating your goals for placement in step-down program.  Once in step-down, you will need to journal, outlining your goals for advancement through the program.

ATTACH 2



**Individualized Needs Plan - Program Review** **(Inmate Copy)**    SEQUENCE: 01906938
Dept. of Justice / Federal Bureau of Prisons    Team Date: 04-28-2023
Plan is for inmate: MORGAN, DONALD RAY   80886-053

|  |  |  |  |
|---|---|---|---|
| Name: | MORGAN, DONALD RAY | DNA Status: | BRO12598 / 08-04-2014 |
| Register No.: | **80886-053** | | |
| Age: | 52 | | |
| Date of Birth: | 06-29-1970 | | |

Inmate    (MORGAN, DONALD RAY. Register No.: 80886-053)

Date

Unit Manager / Chairperson

Case Manager

Date

Date

ATTACH 3

# CERTIFICATE OF COMPLETION

### PRESENTED TO:

# DONALD MORGAN

**FOR SUCCESSFUL COMPLETION OF THE TRAUMATIC STRESS & RESILIENCE JOURNAL**

**AND**

## INCARCERATED VETERANS INDEPENDENT STUDY

**(10 HOURS)**

**APRIL, 19, 2019**



**J. MUNNEKE, PSY.D.**
**CHIEF PSYCHOLOGIST**
**USP MARION**

ATTACH 4



# Certificate of Completion

## Donald Morgan

*Has successfully completed the requirements for*

### ANGER MANAGEMENT

*Self-Study Program*

*(10 Hours)*

*On April 29, 2019*

J. Munneke, Psy.D.
Chief Psychologist
USP Marion

# Certificate of Completion

## Donald Morgan

*Has successfully completed the requirements for:*

*Criminal Thinking*

*(12 Hours)*

*On June 30, 2020*





**J. Munneke, Psy.D.**
**Chief Psychologist**
**USP Marion**

ATTACH 6



**U.S. Department of Justice**
Federal Bureau of Prisons

Federal Correctional Complex
Florence, Colorado

*5880 State Highway 67 South*
*P.O. Box 8500*
*Florence, CO 81226*

August 9, 2023

Donald Ray Morgan
Register Number 80886-053

Dear Inmate Morgan,

You requested a reduction in sentence (RIS) due to extraordinary and compelling reasons. After careful consideration, your request is denied.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the BOP, to reduce a term of imprisonment for extraordinary or compelling reasons. BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), provides guidance on the types of circumstances which present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request has been evaluated consistent with this general guidance.

Medical staff have completed a Reduction in Sentence Eligibility Review and have determined you do not qualify for a RIS based upon on a medical condition. You have not provided any extraordinary or compelling circumstances which would warrant consideration under Program Statement 5050.50. Lastly, you have not provided a release plan or how you will support yourself upon release. Accordingly, your RIS request is denied.

If you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response.

Sincerely,

A. Ciolli
Complex Warden