IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| v. | : | 1:14CR194-1 |
| | : | 1:14CR414-1 |
| DONALD RAY MORGAN | : | |

GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
SECOND MOTION FOR COMPASSIONATE RELEASE

NOW COMES the United States of America, by and through Sandra J. Hairston, United States Attorney for the Middle District of North Carolina, and hereby responds in opposition to defendant Donald Ray Morgan's second motion requesting compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 51, "Motion".

## Summary

This is Morgan's second motion for compassionate release. *See* ECF No. 27.[1] In his present Motion, Morgan requests compassionate release on two bases: what he overall categorizes as a sentencing disparity and then health concerns. Motion at 12-17. Neither of these bases, whether considered individually or in conjunction, constitute extraordinary and compelling

---

[1] All docket references are to M.D.N.C. 1:14CR414-1 unless otherwise noted.

reasons for release. Even if they did, the 18 U.S.C. § 3553(a) factors still militate strongly against Morgan's release.

## Background

Morgan is serving an aggregate 243-month sentence for violations of 18 U.S.C. § 922(g)(1), felon in possession of a firearm, and 18 U.S.C. § 2339B, attempt to provide material support to a foreign terrorist organization. ECF No. 18. The facts of Morgan's offenses have been detailed by the government and the court in filings addressing Morgan's prior compassionate motion, as well as his Section 2255 motion. *See* Nos. 28, 31, 34, 37.

In brief, as to the firearm count of conviction, Morgan, a convicted felon, sold or provided firearms to others on several occasions - including one that qualified as a destructive device under 26 U.S.C. § 5845(f). ECF No. 12, ¶¶ 4-10. His Guidelines range for that offense, without the terrorism enhancement, would have been 51 to 63 months. ECF No. 12, ¶ 127. This Court sentenced Morgan to 63 months on that count. ECF No. 18.

As to the § 2339B conviction, Morgan's conduct has, again, been well documented. In sum, Morgan used social media to communicate his support for ISIS and violent jihad, then took steps to join the fight himself by traveling to Lebanon and attempting to enter Syria. ECF Nos. 4, 12. His posts on Twitter are documented thoroughly in the PSR and in the factual basis. ECF Nos. 4,

2

12, ¶¶ 11-27. He was sentenced to 180 months on this count, to run consecutively with the firearm sentence. ECF No. 18.

Morgan's prior compassionate release motion was denied in September 2021. ECF No. 34. He filed the present Motion on August 28, 2023. ECF No. 51. Morgan is currently incarcerated at USP Florence ADMAX. *See* BOP Inmate Locator, at https://www.bop.gov/inmateloc/ (last accessed October 6, 2023). He has now served over 9 years in prison, or approximately 51% of his statutory term. *See* Exhibit A (BOP Inmate Data) at 4. Morgan is eligible for early release (including good conduct time) on May 14, 2032. *See id.* at 2.

## **Discussion**

Morgan has failed to demonstrate extraordinary and compelling reasons for release in his motion. Even if he had, the § 3553(a) factors still do not support release. This Court should deny Morgan's Motion.

Under the compassionate release provisions of 18 U.S.C. § 3582(c)(1)(A)(i), the district court may modify or reduce an inmate's sentence "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). If

3

this condition is met[2] and the motion is properly before the district court, the court must also find, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable, that "extraordinary and compelling reasons warrant a reduction" of the defendant's sentence and that "such reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" *Id.*

The Sentencing Commission's policy statement provides examples of extraordinary and compelling reasons, including medical conditions, certain family circumstances, and a "catch-all" provision. U.S.S.G. § 1B1.13, cmt. n.1(A)–(D). Because, until last year, the Commission lacked a quorum, it only recently announced its updated policy statement to reflect changes to the law resulting from passage of the First Step Act of 2018, and that statement will take effect November 2023.[3] Accordingly, although the policy statement

---

[2] Morgan requested compassionate release from the warden on August 2, 2023. *See* Exhibit B. The warden denied this on August 9, 2023. *See* Exhibit B. Accordingly, Morgan has satisfied the exhaustion requirement. *See United States v. Muhammad*, 16 F.4th 126, 130–31 (4th Cir. 2021).

[3] On April 5, 2023, the Commission released its adopted amendments to the policy statement (effective November 1, 2023). https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 (last accessed October 11, 2023). The proposed amended Guidelines are presently non-binding, but courts have considered them as helpful guidance, and the government includes an analysis in this response. *See United States v. Randleman*, No. 1:19-CR-521, 2023 WL 3791575 at *3 n.2 (M.D.N.C. June 2, 2023); *United States v. Bacon*, No. 17-CR-98, 2023 WL 2588556, at *4 n.3 (E.D. Va. Mar. 21, 2023).

"provides helpful guidance," *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019), district courts may consider any extraordinary and compelling reason for compassionate release that a defendant raises, with certain limitations. *See United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020); *but see United States v. Ferguson*, 55 F.4th 262 (4th Cir. 2022) (rejecting the proposition that arguments attacking the validity of convictions or sentences can qualify as an extraordinary and compelling reason for compassionate release).

In support of his present Motion, Morgan argues what he characterizes as a sentence disparity supports a finding of an extraordinary and compelling reason to warrant release. While sentencing disparities, under both the present Guidelines and the pending amendments, can constitute extraordinary and compelling reasons, there is no such disparity here - and thus, no extraordinary and compelling reason. *See McCoy*, 981 F.3d at 285-86. In support of this argument, Morgan argues that he would not have received the same sentence today because of his belief that similarly situated defendants receive shorter sentences and convicted terrorists with "more egregious conduct" have qualified for compassionate release. ECF No. 51, 12-17.

Sentencing disparities can constitute extraordinary and compelling reasons, but they are based on the sheer and unusual length of the sentence,

5

as well as the actual gross disparities between the sentences at issue and the sentences that Congress now believes to be the appropriate penalty. *See United States v. Brown*, 78 F.4th 122, 131 (4th Cir. 2023). While there has been a change in the law since Morgan was sentenced, it was to increase the statutory maximum punishment from 15 years to 20 years. *See* Uniting and Strengthening America by Fulfilling Rights and Ensuring Effective Discipline over Monitoring Act of 2015, Pub. Law 114-23, June 2, 2015, 129 Stat. 268 at Sec. 704.[4] Thus, there is no later action by Congress that would indicate its belief that a lesser sentence is a more appropriate penalty.

In making his disparity argument, Morgan relies on cases in which defendants received sentencing reductions for "stacked" § 924(c) penalties, like in *McCoy*, or for cocaine base cases which were before the First Step Act. Motion at 8-11. Those are distinguishable from Morgan's case because they evince clear indications of Congress's intent in reducing sentences based on a change in the law; unlike Morgan's § 2339B conviction, for which Congress has

---

[4] The pending Guidelines amendments contemplate sentencing disparities in supporting compassionate release, but only when the defendant is serving an unusually long sentence, has served at least 10 years of that sentence, and there has been a change in the law. U.S. Sent'g Comm'n, Notice of submission to Congress of Amendments to the sentencing guidelines effective November 1, 2023, and request for comment, 88 Fed. Reg. 28254 (May 3, 2023). There has been no change in the law to support a finding of an extraordinary and compelling reason under this upcoming Guidelines provision in Morgan's case.

increased the penalty since Morgan's judgment. These cases therefore provide no guidance, or basis, for this Court to find a sentence disparity constituting an extraordinary and compelling reason for release.

Morgan also argues that his sentence, when compared with "mean and median sentence of persons convicted of similar crimes" as demonstrated through Sentencing Commission reports, constitutes a sentencing disparity. Motion at 12. Morgan further contends that the terrorism enhancement resulted in a "disproportionate" sentence. Motion at 14. In support of these arguments, Morgan appears to rely on statistics, presumably from the Sentencing Commission, and the case of *United States v. Hammoud*, 2022 WL 17326071 (W.D.N.C. Nov. 29, 2022). In *Hammoud*, the district court determined that Hammoud's 360-month sentence for § 2339B was sheer and unusual, given Hammoud's "next to no criminal history" and that his sentence was "more punitive than the mean federal sentence for murder: 215 months for defendants with a criminal history category of I, and 249 months for defendants in category VI." *Hammoud*, 2022 WL 17326071, at *3. The district court also concluded that Hammoud's sentence was grossly disparate compared with present-day sentencing for § 2339B offenses. *Id*. Ultimately, the district court found that Hammoud's case was "particularly extraordinary" for two reasons: Hammoud's case was the first trial of its kind and the terrorism

7

enhancement under U.S.S.G. § 3A1.4 resulted in a disproportionate sentence. *Id.* at *4.

*Hammoud* is factually distinguishable from Morgan's case, and even if this Court were to apply the *Hammoud* reasoning, there still is no basis for finding an extraordinary and compelling reason justifying release here. First, Morgan, unlike Hammoud, traveled to Lebanon with the specific intent of joining ISIS in Syria. ECF No. 30, Sentencing Transcript at 28-29. Morgan made increasingly radical statements on his social media accounts, including that killings and beheadings are justified. *Id*. Morgan was also in possession of numerous firearms, one of which was designated as a destructive device, while also making statements on his Twitter account like "It's probably time to get an AK47 and stop the threat." *Id*. at 30. Morgan's conduct, while an attempt case as this Court acknowledged, combined increasingly dangerous rhetoric with possession and sales of firearms, making his actions dangerous and indicative of potentially credible threats.

Even were this Court to apply the same reasoning from *Hammoud*, there is still not a sentencing disparity here. Morgan's sentence is not grossly disproportionate to present-day sentencing for similar offenses. *See* U.S. Sent'g Comm'n, *Quick Facts: National Defense Offenders*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-

8

facts/National_Defense_FY22.pdf (last visited October 10, 2023) (average sentence for those defendants receiving a terrorism adjustment was 188 months, and average sentence for those convicted of support to terrorism was 153 months). There simply is no support for the proposition that Morgan offers – that his 15-year sentence for a § 2332B conviction was somehow disparate.

As to the terrorism enhancement leading to a disproportionate sentence, this Court's analysis of its applicability to Morgan's case is particularly instructive. As this Court explained in finding that the terrorism enhancement was warranted,

> Specifically, I am finding that the Defendant intended to join up with ISIS and commit violent jihad activities of ISIS, which include the killing of others and beheading people, including Americans. I find that his conduct was calculated to influence or affect the conduct of the Government by intimidation or coercion, noting that the Defendant did travel to Lebanon and Turkey with the intent to enter Syria and to fight with and support ISIS, and that the Defendant's social media is evidence of his intent to urge violent jihad and the acceptance of radical Islam. His conduct goes beyond mere boasting and statements. Rather, the Defendant took affirmative steps, and he made efforts to actually join up with ISIS and Syria before being thwarted.

ECF No. 30, Sentencing Transcript at 4-5. The Court's findings were thorough and fact-based in applying this enhancement. That it increased Morgan's Guidelines range did not result in a disproportionate sentence; he ultimately received a downward variance from his 300-month Guideline range. In sum,

Morgan cannot demonstrate any disparity in sentencing that qualifies as extraordinary and compelling such as to warrant compassionate release.

Similarly, Morgan's claims regarding his health do not warrant compassionate release. He first claims that he suffers from sciatic nerve disorder, which he asserts is related to degenerative discs from arthritis, and that he would not be able to receive appropriate care from BOP to treat this condition. Motion at 3. A review of Morgan's medical records provided from BOP reveal that he has not been diagnosed with sciatic nerve disorder, though he does appear to take ibuprofen regularly to manage lower back pain and has some sort of arthritis. *See* Exhibit C, BOP Medical Records at 5, 7, 16-18, 26. For Morgan's medical condition to be construed as extraordinary and compelling, the program statement contemplates the need to establish a "serious physical or medical condition" that "substantially diminish[es] his ability to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13 at app. note 1(A). That is not the case here. Morgan is ambulatory, even exercising, and notes relief with ibuprofen. Exhibit C at 5.

As to Morgan's claim that he would receive better medical treatment outside of BOP for his alleged nerve disorder, only the pending Guidelines amendments address this basis. It provides for extraordinary and compelling reasons when "[t]he defendant is suffering from a medical condition that

requires long term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S. Sent'g. Comm'n, Notice of submission to Congress of Amendments to the sentencing guidelines effective November 1, 2023, and request for comment, 88 Fed. Reg. 28254 (May 3, 2023). First, Morgan has no such condition. Further, even if he did, the undersigned spoke with a BOP attorney who indicated that BOP would be able to provide pain management at Morgan's current facility, and if there was need for more in-depth treatment, Morgan could be transferred to a federal medical complex. However, there is no need for this treatment because Morgan does not have this alleged condition. His pain appears to be well managed by BOP at this time. Exhibit C at 3, 5-6.

Morgan also alleges that he is at significant risk of severe illness or death from COVID-19. Motion at 6. For COVID-19 to present an extraordinary and compelling reason, a defendant must allege "'that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that [his] preexisting medical condition increases [his] risk of experiencing a serious, or even fatal, case of COVID-19.'" *Brown*, 78 F.4th at 128 (quoting *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)). That entails consideration of the totality of the circumstances and whether "'an inmate shows both a

11

particularized susceptibility to COVID-19 and a particularized risk of contracting the disease at his prison facility.'" *Id.* (quoting *United States v. Hargrove*, 30 F.4th 189, 198 (4th Cir. 2022)). Morgan can show neither a particularized susceptibility to COVID-19, nor a particularized risk of contracting the disease at Florence ADMAX.[5]

Morgan offers this Court no information as to why he is be particularly susceptible to COVID-19, nor why he has a particular risk of contracting it at his current BOP facility. None of Morgan's conditions put him at an increased risk of serious COVID-related illness.[6] While he does appear to have contracted COVID-19 and been asymptomatic, he also has received the three doses of the COVID-19 vaccine (two in 2021 and booster in 2022) but refused the second booster in February 2023. *See* Exhibit C at 17-18; Exhibit D, Immunization Records. FCC Florence, which includes Florence ADMAX, is currently reporting zero open COVID-19 cases. *See* Fed. Bureau of Prisons, Inmate COVID-19 Data, at

---

[5] This analysis remains the same even considered under the pending Guidelines amendments.

[6] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed October 10, 2023).

12

https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last accessed October 10, 2023).

With respect to COVID-19, district courts continue to routinely deny compassionate release requests from defendants who have received the vaccine, finding that vaccination mitigates the risk of infection in a congregate living facility such that extraordinary and compelling reasons no longer exist.[7] *See, e.g.*, *United States v. Holman*, No. 1:12CR72-1, slip op. at 9–10 (M.D.N.C. Dec. 10, 2021); *United States v. Simpkins*, 2021 WL 2445885, at *2 (E.D.N.C. June 15, 2021); *Gale v. United States*, 2021 WL 1912380, at *3 (E.D. Va. May 12, 2021); *United States v. Wiley*, 2021 WL 1669523, at *2 (M.D.N.C. Apr. 28, 2021); *United States v. Harris*, 2021 WL 1516012, at *2 (D. Md. Apr. 16, 2021); *United States v. Burks*, 2021 WL 1394857, at *3–4 (W.D.N.C. Apr. 13, 2021).

---

[7] Importantly, Morgan's refusal of the second COVID-19 booster, with no compelling reason to justify refusal, also cuts against any finding of an extraordinary and compelling reason for release. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("if an inmate does not present a compelling reason justifying the failure to be vaccinated despite access to the vaccine, a district court would abuse its discretion by granting a motion seeking a sentence reduction under § 3582(c)(1)(A)(i) on the grounds that COVID-19 constitutes an extraordinary and compelling justification."); *see also United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an "extraordinary and compelling" justification for release. The risk is self-incurred."); *see also United States v. Barbee*, 25 F. 4th 531, 533 (7th Cir. 2022) (applying *Broadfield*).

On appeal, such decisions are affirmed. *See, e.g., United States v. Vaughn*, 62 F.4th 1071, 1072 (7th Cir. 2023); *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021); *United States v. Thomas*, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (unpublished).

Morgan does not meet the "extraordinary and compelling" standard under 18 U.S.C. § 3582(c)(1)(A). Morgan's sentence is neither reflective of a disparity nor of disproportionality considering the unique facts of his conviction; further, Morgan's medical records show he does not suffer from any chronic condition which rises to the level of extraordinary and compelling, and he does not demonstrate how he is particularly susceptible to COVID-19 after receiving three COVID-19 vaccine doses or why his refusal to continue to be vaccinated does not otherwise outweigh his claim that potential exposure to COVID-19 is extraordinary and compelling.

However, even if this Court were to find that Morgan had demonstrated an extraordinary and compelling reason, which the government strongly contends he has not, the Section 3553(a) factors militate against early release. This Court must consider and conduct a full evaluation of the § 3553(a) factors in Morgan's case in light of the circumstances for which he now seeks release. *See United States v. Malone*, 57 F. 4th 167 (4th Cir. 2023). Doing so reveals that such factors still weigh against Morgan's release.

The government has previously detailed the significance of the Section 3553(a) factors in response to Morgan's first motion for compassionate release. *See* ECF Nos. 28. Morgan's history and characteristics reveal a person described as "obsessive and compulsive" with a prior history of using firearms when involved in conflict. ECF No. 12 ¶¶ 59, 80, 128. Further, the nature and circumstances of Morgan's offense conduct weigh heavily against his release. He broadcasted his support for ISIS, acted to join the group in Syria, advocated for violent jihad, and possessed and sold firearms. *Id*. ¶¶ 5-9, 12-22. Morgan's behavior is not just concerning but represents a true danger to the public. At the time of the offense, Morgan was in possession of firearms, broadcasted his support for a terrorist organization, advocated for violence against enemies of the Islamic State, and also took steps to join ISIL/ISIS, including an attempted entry into Syria.

Those factors remain unchanged in this new motion, and Morgan offers this Court no new circumstances which would merit release. During his time in custody, as previously noted by the government in response to Morgan's first filing, Morgan has not been free of disciplinary infractions. He has been involved in six incidents. *See* Exhibit E, Inmate Discipline Data and Administrative Remedy. Although the most recent of which was in 2018, the behavior is significant and demonstrates Morgan's continued dangerousness.

15

Morgan has been sanctioned for possession of a dangerous weapon, assaulting another person, encouraging others to riot (which he admitted), threatening bodily harm, punching another inmate, and disruptive conduct. *Id*. These all have a common theme of violence and aggression, suggesting that Morgan continues to pose a danger to the community if released.

While Morgan has availed himself of educational opportunities at the BOP, they are not of such unique or extraordinary character that is otherwise outside of standard rehabilitation. Since 2019, he has taken 140 hours of classes and is presently enrolled in two courses. Exhibit F, Inmate Education Data. A review of the Section 3553(a) factors demonstrates that Morgan still remains a danger to the community and merits no relief under § 3582(c)(1)(A).

CONCLUSION

WHEREFORE, as set forth herein, the government requests that the Court deny Morgan's second motion for compassionate release.

This the 11th day of October, 2023.

                                      Respectfully submitted,

                                      SANDRA J. HAIRSTON
                                      United States Attorney

                                      /S/ MARGARET M. REECE
                                      Assistant United States Attorney
                                      NCSB #46242
                                      United States Attorney's Office
                                      Middle District of North Carolina
                                      251 N. Main Street, Ste. 726
                                      Winston-Salem, NC 27101

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, and a copy was mailed to the following non-CM/ECF user:

Donald Ray Morgan
Reg. #80886-053
USP Florence ADMAX
U.S. Penitentiary
P.O. Box 8500
Florence, CO 81226

/S/ MARGARET M. REECE
Assistant United States Attorney
NCSB #46242
United States Attorney's Office
Middle District of North Carolina
251 N. Main Street, Ste. 726
Winston-Salem, NC 27101