UNITED STATES OF AMERICA )
) 1:14-CR-194
v. ) 1:14-CR-414
)
DONALD RAY MORGAN )

## MEMORANDUM ORDER

Before the court is pro se Defendant Donald Ray Morgan's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 61.)[1] The Government has responded in opposition (Doc. 65), and Morgan has replied (Doc. 69). Morgan has also moved for an extension of time to file a reply on the ground that he did not timely receive the Government's response. (Doc. 68.) The court will grant his motion for an extension of time and treat his reply as timely filed. For the reasons set forth below, the motion for compassionate release will be denied.

## I. BACKGROUND

On October 30, 2014, Morgan pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (1:14-cr-194) and attempt to provide material support to a foreign terrorist organization, namely the Islamic State of Iraq and Syria ("ISIS"), in violation of 18 U.S.C. § 2339B (1:14-cr-414). (Doc.

---

[1] Morgan's identical motions have been filed in case numbers 1:14-cr-194 and 1:14-cr-414. The court refers to the docket entries in 1:14-cr-194 unless otherwise indicated, but this opinion applies to the motions in both cases.

28.) On May 13, 2015, Morgan was sentenced to 63 months for the § 922(g)(1) conviction and to the then-applicable statutory maximum of 180 months for the § 2339B conviction, to run consecutively. (Id.) Morgan's presumptive release date is May 14, 2032. Fed. Bureau of Prisons, Find an Inmate, at https://www.bop.gov/inmateloc. He is currently incarcerated at USP Florence. Id. He is 53 years old. Id.

Morgan filed his motion for compassionate release on August 28, 2024. (Doc. 61.) He argues that a combination of sentencing disparities, reduced recidivism risk, and his sciatic nerve disorder constitute extraordinary and compelling reasons for compassionate release. (Id. at 1-3.) The Government disagrees that any of these circumstances individually, or cumulatively, amount to grounds for a sentence reduction. (Doc. 65.)

II. **ANALYSIS**

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions," but prior to the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, district courts could grant such reductions only upon a motion by the Director of the Bureau of Prisons ("BOP") pursuant to 18 U.S.C. § 3582(c)(1). United States v. Beck, 425 F. Supp. 3d 573, 577-78 (M.D.N.C. 2019). However, Congress amended section 3582(c)(1) when it passed the First Step Act. Pertinent here, the First Step Act added a

2

provision to section 3582(c)(1) that allows a defendant to bring a motion for compassionate release directly in a district court after either "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Once the exhaustion requirement is met, a defendant must either (1) have "extraordinary and compelling reasons" for a compassionate release or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the public. Id. The defendant bears the burden of establishing that extraordinary and compelling reasons justify his release. See United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021); see, e.g., United States v. Hargrove, 30 F.4th 189, 195 (4th Cir. 2022). Further, while a court need not address every argument raised by a defendant, it must fully explain its decision in light of the particular circumstances of each case. United States v. Osman, No. 21-7150, 2022 WL 485183, at *2 (4th Cir. Feb. 17, 2022) (per curiam) (unpublished)[2] (citing United States v. High, 997 F.3d 181, 188-

---

[2] Unpublished opinions of the Fourth Circuit are not precedential but are cited for their persuasive, but not controlling, authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

3

89 (4th Cir. 2021)). Additionally, a court, in considering a reduction in sentence pursuant to section 3582(c)(1)(A), must consult the sentencing factors set forth in 18 U.S.C. § 3553(a) and may grant the reduction only if it is "consistent with [the] applicable policy statements" issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

As an initial matter, Morgan contends there is a disparity between the sentence imposed and the sentence he would receive if sentenced when he filed his motion. (Doc. 61 at 1-2.) At the time of his motion, the controlling law for considering a sentencing disparity on a motion for compassionate release was United States v. McCoy, 981 F.3d 271 (4th Cir. 2020), and the U.S. Sentencing Commission had not updated its guidelines. Effective November 1, 2023, the newly amended section 1B1.13(b)(6) approximately codifies the principles of McCoy. However, the new amendment requires that a defendant serve 10 years before the court may consider a sentencing disparity as an extraordinary and compelling reason. Compare U.S.S.G. § 1B1.13(b)(6) (2023) (providing that a court may consider a change in the law when determining "whether the defendant presents an extraordinary and compelling reason," but only if the defendant has served 10 years of his sentence and "where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full

4

consideration of the defendant's individualized circumstances"), with McCoy, 981 F.3d at 287-88 (allowing for the "provision of individual relief in the most grievous cases" of sentencing disparities created by a change in law, but only upon "individualized inquir[y]"). By imposing this additional requirement, section 1B1.13(b)(6) now arguably "narrows the range of possible extraordinary and compelling reasons." United States v. Curtin, Crim. No. 14-0467, 2023 WL 8258025, at *2 (D. Md. Nov. 29, 2023). Because applying the current guidelines might present an *ex post facto* issue, the court will apply the 2021 Sentencing Guidelines manual in effect when Morgan's motion was filed, which is the position most favorable to his claim. See U.S.S.G. § 1B1.11(b)(1)-(2) (barring the use of the manual in effect on the date of sentencing if it would violate the *ex post facto* clause, and requiring application of manual "in its entirety").[3]

Courts maintain broad discretion in the evidence they may consider on a motion to reduce a sentence under the First Step Act. Concepcion v. United States, 597 U.S. 481, 498-501 (2022). However, courts do not have unfettered jurisdiction or discretion to modify criminal sentences. See United States v. Goodwyn, 596

---

[3] In United States v. Davis, 99 F.4th 647 (4th Cir. 2024), the Fourth Circuit indicated that a district court may consider new amendments under Concepcion, 597 U.S. 481 (2022), even where a motion is filed before the amendments are promulgated. Davis, 99 F.4th at 658. The court here has considered these new amendments and finds that their application would not change the outcome. In fact, the amendments would appear to be disadvantageous to Morgan.

5

F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart.") (internal quotations omitted). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute, such as 18 U.S.C. § 3582(c), expressly permits it to do so. Even then, section 3582(c) is appropriately invoked only in unusual cases, or, as the Fourth Circuit phrases it, the "most grievous cases." McCoy, 981 F.3d at 287; see Osman v. United States, Crim. No. 2:10-cr-57-5, 2023 WL 3765246, at *4 (E.D. Va. June 1, 2023) ("The Senate Judiciary Committee report on the Sentencing Reform Act explained that compassionate release would address 'unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances.'" (citations omitted)). It is not a vehicle for repeated reconsideration of sentences as a way to circumvent the general rule of finality. See Goodwyn, 596 F.3d at 235-36. Nor is it a vehicle to collaterally attack a federal conviction or sentence. United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022).

The Government concedes that Morgan has satisfied the exhaustion requirement. (Doc. 65 at 4 n.2.) The court thus turns to the merits.

First, Morgan argues that a disparity between the sentence imposed and the sentence he would receive today warrants a sentence reduction. (Doc. 61 at 9.) Morgan likens his situation to the

6

defendants in McCoy, but he points to no change in law that would create a sentencing disparity. See McCoy, 981 F.3d at 275 (describing statutory change in law that significantly decreased statutory maximum); see also United States v. Eccleston, 573 F. Supp. 3d 1013, 1019 (D. Md. 2021) (finding extraordinary and compelling reason where more culpable co-defendant benefitted from change in law and thus was serving a shorter sentence than less culpable movant).[4] Here, Morgan only argues that mean and median sentences for others convicted of his crimes are lower than the sentences he received. (Doc. 61 at 13.) However, Morgan has failed to demonstrate why the alleged lower mean and median sentences warrant a sentence reduction; by definition, such an argument requires the court to impermissibly ignore the aggravating factors that the court found when it sentenced Morgan in the first instance. (Doc. 40 at 28-33 (discussing e.g., travel to assist ISIS).) Additionally, even though Morgan's offense level was adjusted under § 3A1.4(a) for terrorism-related felonies, Morgan contends that the court should look to the average sentences

---

[4] As the Government notes, the only relevant change in law here is that the statutory maximum under § 3229B has increased from 15 years to 20 years since Morgan's conviction. Uniting and Strengthening America by Fulfilling Rights and Ensuring Effective Discipline over Monitoring Act of 2015, Pub. L. 114-23, Title VII, § 704, 129 Stat. 300. If sentenced today, Morgan would potentially be subject to an even higher sentence.

7

of those who did not receive such an adjustment.⁵  As the Government rightly points out, however, the average sentence of those similarly situated to Morgan — i.e., those who did receive a terrorism adjustment — was 188 months in fiscal year 2022.  U.S. Sentencing Comm'n, Quick Facts: National Defense Offenders, Fiscal Year 2022, at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/National_Defense_FY22.pdf (last accessed May 22, 2024).  By comparison, Morgan's sentence for § 2339B conviction was 180 months, and Morgan benefitted from a significant downward variance from 300 months to 243 months on the aggregation of the § 2339B sentence and the § 922(g) sentence.  (Doc. 56.) Accordingly, Morgan has failed to demonstrate that any sentencing disparity justifies a sentence reduction.

Morgan secondly argues that his sciatic nerve disorder is a medical condition that warrants compassionate release.  Morgan's medical records indicate that he experiences lower back pain.  (Doc. 66-1 at 1-5.)  It is being treated with ibuprofen.  (Id. at 3.)  While Morgan has argued that he does not have access to a

---

⁵ To the extent Morgan contests the application of U.S.S.G. § 3A1.4(a) for a felony that involved, or was intended to promote, a federal crime of terrorism (Doc. 61 at 13-15), such an argument is not cognizable on a motion for compassionate release because it amounts to a collateral attack on the sentence.  Ferguson, 55 F.4th at 270.  Further, the court made thorough findings at Morgan's sentencing hearing to justify the imposition of this enhancement.  (Doc. 40 at 4-5.)

8

chiropractor in prison (Doc. 61 at 3), he has not shown that he has not received required specialized medical care or that he has experienced a substantially diminished capacity to carry out self-care in the correctional environment. See U.S.S.G. § 1B1.13 app. note 1. To the contrary, his medical records demonstrate that he is ambulatory and exercising. (Doc. 66-1 at 5.)[6]

Morgan also contends that he has moderated his views, has remorse and regret for his actions, and has taken classes to rehabilitate himself. (Doc. 61 at 19.) If true, such rehabilitation would be a step in the right direction for him. Nonetheless, his rehabilitation is not an extraordinary and compelling reason for compassionate release. U.S.S.G. § 1B1.13 app. note 3 ("[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."). In sum, the court has considered Morgan's various bases for a sentence reduction and finds that they do not, alone

---

[6] Morgan also references the risk of contracting COVID-19 in prison as a reason for a sentence reduction. (Doc. 61 at 6.) He has not alleged any particular susceptibility to COVID-19 that presently puts him at a heightened risk of severe disease or death. United States v. Brown, 78 F.4th 122, 131 (4th Cir. 2023); see United States v. Garcia, No. 5:03-CR-20, 2023 WL 6883187, at *4 (W.D.N.C. Oct. 18, 2023) (denying relief where generalized hardship would otherwise "become the 'exception that swallows the general rule of finality'" (quoting United States v. Hancock, No. 1:06-CR-206-2, 2021 WL 848708, at *5 (M.D.N.C. Mar. 5, 2021))). He only states in his reply that he is "predisposed to developing cancer and diabetes," not that he presently has these conditions. (Doc. 69 at 2-3.) Moreover, USP Florence currently reports no active cases of COVID-19. Bureau of Prisons, Inmate COVID-19 Data, at https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last accessed June 4, 2024).

or cumulatively, give rise to extraordinary and compelling reasons.

Even if extraordinary and compelling reasons existed, early release would not be appropriate in this case in light of the § 3553(a) factors. Section 3553(a) requires a court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the statutory purposes of sentencing. 18 U.S.C. § 3553(a). Importantly, the "text of § 3553(a) does not make any factor, or combination of factors, dispositive." Kibble, 992 F.3d at 334-35 (Gregory, C.J., concurring). Thus, the court must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence[s] and the sentencing range established for [the applicable offense category as set forth in the guidelines] . . .;

10

> (5) any pertinent policy statement . . . by the Sentencing Commission . . .;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Morgan's offense conduct was extraordinarily serious, as well-documented in the pre-sentence report. (Doc. 21 ¶¶ 4-27 (describing possession of four firearms, including one that was designated as a destructive device, attempt to join ISIS, and extensive extremist social media posts).) His criminal history also includes a conviction for discharging a weapon into an occupied building — namely, a restaurant. (Id. ¶ 59.) Further, while these disciplinary incidents occurred years ago, Morgan was found in prison to have possessed a dangerous weapon, assaulted another person, encouraged others to riot, and punched another inmate. (Doc. 65-3.) Granting Morgan's motion for compassionate release would therefore fail to adequately reflect the seriousness of the offenses of conviction, his criminal history, and the need for deterrence and to promote respect for the law.

## III. CONCLUSION

For the reasons stated,

11

IT IS THEREFORE ORDERED that Morgan's motion for an extension of time to file a reply (Doc. 68 in 1:14-CR-194; Doc. 57 in 1:14-CR-414) is GRANTED and that Morgan's reply is treated as timely.

IT IS FURTHER ORDERED that Morgan's motion for compassionate release (Doc. 61 in 1:14-CR-194; Doc. 51 in 1:14-CR-414) is DENIED.

/s/   Thomas D. Schroeder
United States District Judge

June 4, 2024